THE STATE OF GEORGIA *vs.* MILTON MALONE.

*Indictment for murder, verdict of guilty, and motion for a new trial.*

And now comes the defendant, by his attorneys at law, and moves the Court to set aside the verdict rendered in the above cause, and to grant him a new trial upon the following grounds,

of which he knew nothing until about September 20th, 1873, and which came to his knowledge on or about that time, to-wit:

1st. Because he has learned that he can prove by one R. L. Turner, a citizen residing in the county of Fulton, in said State, that he was present at the house known as the "carriage factory" on the night of the homicide, saw the whole difficulty, and knows that the defendant shot Phillips in defense of his own life.

2d. Because he has learned since the trial that the jurors put upon him on said trial were selected, chosen and impaneled under a law of the State of Georgia, enacted and passed for the purpose of excluding from service as jurors a certain class of citizens, on account of their previous condition of race and color, and that the purpose of said law was political, so as to deprive persons belonging to the republican party from an equal participation in the rights and privileges of other citizens, and equality before the Courts of said State of Georgia, and that the said proceedings and law are in violation of the fourteenth amendment of the Constitution of the United States, and resulted in manifest wrong and injury to this defendant.

3d. Because James O. Harris, the sheriff of the county of Fulton, in selecting said panel of jurors which was put upon said defendant, confined himself to a certain class of white persons, being only one thousand in number, when there were citizens of said county, amounting to four thousand seven hundred, equally liable and competent, under the law, to do jury duty, and that the same were drawn, selected and summoned by the sheriff aforesaid, to exclude from the jury and the equal participation before the Courts of the class of colored persons residing in said county, and to make up the jury in said case from the selected class, and not so as to allow equality before the Courts to all the citizens of the United States.

4th. Because the only qualification of a juror, under the Constitution of the State of Georgia, is uprightness and intelligence, when the same should be impartiality, and by which

means the defendant was denied all the tests usual in the Courts of justice, to test the fairness and impartiality of jurors selected to try him.

5th. Because the defendant was insane at the time of the commission of said alleged offense, at his trial therefor, and is now, which facts were not known, as developed by the testimony of Dr. Charles Pinckney, in an affidavit hereto annexed, until since said trial.

Said motion was supported by the following affidavits:

1st. Affidavit of James G. Maull, to the effect that he was a member of the Convention which framed the present Constitution of the State of Georgia; that he represented the county of Muscogee in the first Legislature assembled under the provisions of said Constitution; that it is his belief and understanding that the clause of said Constitution organizing a jury system, known as paragraph 2, section 13, Article V., was inserted therein for the purpose of excluding colored. persons, as a class, from the jury box, and by operation of law to prevent said class from serving on juries; that the Act passed by the General Assembly for the purpose of carrying into effect the aforesaid provision, had also in view, in his opinion, the exclusion from the jury box of the colored people as a class.

2d. Affidavit of James O. Harris, to the effect that he was the sheriff of Fulton county, and was present when the jury box was made up by the commissioners appointed for that purpose; that on the tax books there were two lists of tax payers, one of white and the other of colored persons, and the commissioners made up the jury box exclusively from the white list, without examining the list of colored persons at all; that all the panels put upon the defendant at his trial were taken from the jury box made up as aforesaid.

3d. Affidavit of Charles Pinckney, to the effect that he is a practicing physician; that he saw defendant for the first time on the morning of the day of the killing, and believed him insane, and so expressed himself to F. B. Palmer at the time; that he has been defendant's physician ever since the homicide,

Malone *vs.* Hopkins.

and has all of this period believed, and does now believe, that defendant is at times an insane man, and that he was at the time of the killing in a condition of *mania a potu;* that deponent was a witness at the trial, and would have testified to these facts had the questions been propounded to him, but he did not feel called upon, on his own motion, so to do.

4th. Affidavit of F. B. Palmer, in reference to the remark made to him by Dr. Charles Pinckney, as to defendant's suffering from *mania a potu.*

5th. Certificate of A. E. Buck, clerk of the Circuit Court of the United States for the Northern District of Georgia, to the effect that the jurors selected from Fulton county for said Circuit Court consist of seventy, of whom forty are white and thirty are colored.

6th. Affidavit of defendant, to the effect that the facts set forth in the said motion for a new trial are true, to the best of his knowledge and belief, and have come to his knowledge since his trial, to-wit: about September 20th, 1873.

The State responded to said motion as follows:

1st. That at the October term, 1872, of this Court, a motion for a new trial in this case was made and overruled, which decision was affirmed at the July term, 1873, of the Supreme Court, and a second motion cannot be made, under the laws of this State.

2d. That substantially the same grounds were made and acted on in the former motion, and the defendant is, therefore, precluded from another hearing on said grounds.

3d. That the Constitution of the State of Georgia, and the laws passed under it, were made for the purpose of securing "intelligent and upright persons" as jurors, and not for any political purpose, or for the purpose of excluding colored persons, as members of the republican party, from the juries of this State.

4th. That the insanity of the defendant was made one of the grounds of the former motion, and was passed upon by the Court.

5th. That neither of the defendant's attorneys make oath

that they were not fully informed, at the time of making the former motion, of all the grounds set forth in the last motion.

6th. That the exclusion of colored persons from the jury cannot be complained of by the defendant, as he is a white man, and was tried by white men.

In support of this answer were attached the following affidavits :

1st. Affidavit of John R. Wallace, L. B. Langford, W. E. Spruill, and Daniel Pitman, Ordinary of Fulton county, to the effect that they were four of the five commissioners who selected the jurors for said county from the book of the receiver of tax returns, on or about the first Monday in June, 1872; that they made said selection and revision of said jury box impartially, without regard to race, color or previous condition, and placed upon the lists of jurors only such persons as they considered upright, intelligent and competent under the law; that the colored persons on said tax digest were not excluded from the jury box, as a class, at said selection; that uprightness and intelligence alone were looked to by the commissioners, and many white persons were left off who could not read and write, not considering them, for those and other reasons, intelligent; that others were left off as not considered upright. The names of the colored persons were discussed and omitted, some for want of sufficient intelligence, and others for want of uprightness; that the names of some of the colored persons were left off because exempt as ministers of the gospel and doctors; that the names of many white persons were omitted for the same reasons, and others because firemen; that no persons of color were placed on said list because the commissioners knew of none whom they considered competent except two or three, and they were exempt.

2d. Affidavit of H. V. M. Miller to the effect that he was a member of the Constitutional Convention of 1868, and that the section of the Constitution then adopted which reads as follows : " The General Assembly shall provide by law for the selection of upright and intelligent persons to serve as jurors," was reported by a committee, of which Amos T.

Akerman was the chairman, and was adopted without debate or objection; that deponent did not vote for it for the purpose of excluding colored persons as a class from the jury box, but with the object in view of shutting out the ignorant and the vicious of all races; that members of the republican party were not excluded from serving as jurors as a class or as individuals.

3d. Statement with no signature attached, that Amos T. Akerman, chairman of the committee which reported the jury clause referred to in the foregoing affidavit, was late Attorney General of the United States of America under the administration of President Grant.

4th. Affidavits of John B. Langley, C. R. Pennick, Josh. Tye and A. P. Cassin, to the effect that the defendant, about the time of the homicide, before and after, conversed and acted as a sane man.

5th. Affidavit of L. T. Downs to the effect that up to the time of the homicide, he had known the defendant four or five years; that about fifteen minutes before the killing, defendant was in the deponent's grocery talking to McAlister and Cooper; that defendant was under the influence of liquor to some extent, but to all appearances was in his right mind, and talked as sensibly as he ever did; that there was nothing about the defendant that in the least indicated craziness or absence of his right mind; that the deponent saw him some two or three days before this walking on the sidewalk without his shoes on; that he then thought he looked as if he was crazy.

The motion for a new trial was overruled. A bill of exceptions, based on said ruling, was presented to the presiding Judge, who refused to sign and certify the same. Whereupon, a *mandamus nisi* from the Supreme Court was prayed for. This was refused in the decision which follows:

W. A. HAWKINS; J. F. POU; GARTRELL & STEPHENS; D. P. HILL, for the relator.

JOHN T. GLENN, Solicitor General, for respondent.

Malone *vs.* Hopkins.

WARNER, Chief Justice.

This is an application for a *mandamus* to compel the Judge of the Superior Court to sign and certify a bill of exceptions to the judgment of that Court in overruling a second motion for a new trial in the case of the State against Malone. The signing of the bill of exceptions would necessarily make it the duty of the Court to grant a *supersedeas* as to the execution of the judgment of the Court. It appears from the record that the defendant has been tried and found guilty of the offense of murder; that a motion was made for a new trial at the term of the Court at which the trial was had, which motion was overruled, and the defendant excepted, and prosecuted his writ of error to this Court, in which the judgment of the Court below was affirmed and the defendant sentenced to be executed, in accordance with that judgment of the Court. The defendant has now made a second motion for a new trial, and the question is, whether he has made such an " extraordinary case " as will entitle him to be heard a second time on that motion, under the laws of this State. By the 3668th section of the Code, it is declared that, " all applications for a new trial, except in extraordinary cases, must be made during the term at which the trial was had, but may be heard, determined and returned in vacation." The 3670th section declares, " in case of a motion for a new trial, made after the adjournment of the Court, some good reason must be shown why the motion was not made during the term, which shall be judged of by the Court. In all such cases, twenty days' notice shall be given to the opposite party." In this case the defendant *did* make a motion for a new trial at the term of the Court at which the trial was had, which has been overruled. To entitle the defendant to make a second motion for a new trial, after he has once been heard, will require such an extraordinary statement of facts, according to the repeated rulings of this Court, as would probably produce a different result if a new trial should be granted, and the extraordinary statement of facts relied on to produce that result must have

been unknown to the defendant, or his counsel, at the time of the first motion, and could not have been ascertained by them in the exercise of proper diligence for that purpose. If the extraordinary facts now relied on for this second new trial *were* unknown to the defendant and his counsel at the time the first motion for a new trial was made, it is quite apparent they could have ascertained them by the exercise of proper diligence for that purpose; but it is not shown that his counsel did not know the facts at that time. Besides, it is not by any means probable that if a new trial should be granted, the extraordinary facts relied on would or ought to produce a different result as to the verdict. The *certainty* of punishment of those who violate the criminal laws of the State is the only preventive of crime.

In our judgment, there are no extraordinary facts contained in the defendant's second motion for a new trial which, under the laws of this State applicable thereto, entitle him to another hearing, either in the Court below or before this Court.

The application for *mandamus* is therefore refused.